IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 35748-1-III |
| | ) | |
| ROGER L. ALDRICH, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| MARY BETH ALDRICH, | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, C.J. — Roger Aldrich appeals the court commissioner's decision reducing, instead of terminating, his monthly obligation to pay lifetime spousal maintenance to Mary Beth Aldrich. We affirm.

FACTS

Mr. Aldrich and Ms. Aldrich were divorced on June 4, 2010. As part of the divorce decree, the trial court entered detailed findings related to Ms. Aldrich's request for lifetime maintenance. In essence, the trial court found that Mr. Aldrich's earning capacity was greater than his current $60,000 salary, he had unique skills as a security

expert, and those skills "should be in demand for the foreseeable future." Clerk's Papers (CP) at 10. On the other hand, Ms. Aldrich had chronic depression and 30 years of mental health treatment. These conditions made it "difficult for her to work full time and she is presently not employable." CP at 10. The trial court ordered Mr. Aldrich to pay Ms. Aldrich lifetime spousal maintenance in the monthly amount of $2,500, plus 35 percent of any net monthly income over $5,000 per month. In 2010, Mr. Aldrich was 62 years old.

In February 2015, Mr. Aldrich's employer, Center for Personal Protection and Safety (CPPS), notified him of a decrease in his salary from $140,000 to $105,000 due to less demand for its services. In May 2015, CPPS informed Mr. Aldrich that his position with the company had been eliminated and offered him a new position at a further-reduced salary of $70,000 per year. Eventually, this position was eliminated on August 1, 2015.

Mr. Aldrich filed a petition for modification of spousal maintenance on September 1, 2015. At that time, he continued to work for CPPS, but as an independent contractor. CPPS paid him $1,000 per day on an "'as needed'" basis. CP at 580. Income from this arrangement totaled $20,500 between January 2016 and June 2016.

The matter was heard by a court commissioner on May 9, 2016. The court commissioner dismissed Mr. Aldrich's petition to modify. He appealed the dismissal, and we reversed with instructions to reconsider his request.

On September 11, 2017, the parties reargued their positions to the court commissioner. The court commissioner issued a letter decision that was incorporated by reference into the commissioner's later findings and conclusions. We number and summarize the pertinent findings:

1.      Since the 2010 order, there have been changes in the security industry, and CPPS specifically, in which Mr. Aldrich's circumstances have substantially changed.

2.      Ms. Aldrich's argument that Mr. Aldrich is purposefully unemployed is not supported by actual evidence.

3.      Mr. Aldrich makes $7,682.00 in gross monthly income: $2,149.79 from Air Force Retirement, $2,198.44 from a Federal Civil Service Annuity, $1,668.00 from Social Security and approximately $1,666.00 from income from CPPS. Deductions of $1,934.00 bring his net income to $5,748.00. His stated expenses total $4,430.00, which leaves an excess of $1,318.00 each month.

4.      Ms. Aldrich lists gross income of $6,034.00 per month: $970.41 in retirement, $1,630.00 from Social Security, and $3,425.00 from other sources.  Deducting approximately $1,300.00 in taxes (22 percent), her net income is approximately $4,734.00 per month.  Based on her stated monthly expenses of $6,512.00, the commissioner determined that Ms. Aldrich has a need for an additional $1,700.00 each month.

From these findings, the court commissioner concluded:

> Based on consideration of the factors that play into maintenance, namely RCW 26.09.060 . . . it appears that Ms. Aldrich has the need and Mr. Aldrich has the ability to pay continuing maintenance in the amount of $1,300 each month, under the same terms as previously ordered, for the lifetime of Ms. Aldrich or until she remarries.

CP at 581.

The court commissioner required the maintenance award to be covered by an appropriate life insurance policy on Mr. Aldrich with Ms. Aldrich listed as the beneficiary.  The reduction in maintenance was ordered retroactive to September 1, 2015, the date Mr. Aldrich filed his petition for modification.  To account for overpayments made since September 1, 2015, the court reduced Mr. Aldrich's monthly payment to $1,000 until such time as the full amount is credited back to him.

Mr. Aldrich appeals.

ANALYSIS

Mr. Aldrich raises two central arguments on appeal: (1) The court commissioner abused its discretion in not terminating his monthly spousal support obligation, and (2) the court commissioner abused its discretion in not awarding a judgment for overpayments and not terminating the insurance requirement. Before we can address Mr. Aldrich's two central arguments, we need to determine the facts before us.

Mr. Aldrich lists 17 separate assignments of error. Of these, 8 relate to contested findings. The contested findings pertain to the parties' income and expenses set forth above in items 3 and 4. Mr. Aldrich does not contest the challenged findings in any organized manner. Instead, he reargues the evidence he presented, including the expert opinion he offered concerning his current and future earning capacity. The court commissioner struck that expert's opinion. Mr. Aldrich has not assigned error to this or otherwise explained why the court commissioner erred in this regard.

An appellant must demonstrate why specific findings of the trial court are not supported by the evidence and cite to the record in support of that argument. *In re Estate of Lint*, 135 Wn.2d 518, 532, 957 P.2d 755 (1998). In the absence of a clear challenge, we treat findings of fact as verities on appeal. *In re Estates of Palmer*, 145 Wn. App.

249, 265, 187 P.3d 758 (2008). For this reason, we accept the court commissioner's findings relating to the parties' incomes and expenses.

> A.     DECISION NOT TO TERMINATE SPOUSAL MAINTENANCE

We review a modification order to determine if the trial court's findings are supported by substantial evidence and whether it made legal error. *In re Marriage of Hulscher*, 143 Wn. App. 708, 713, 180 P.3d 199 (2008). We review the trial court's decision of whether or how much to modify for an abuse of discretion. *In re Marriage of Drlik*, 121 Wn. App. 269, 274, 87 P.3d 1192 (2004).

Mr. Aldrich raises four arguments to support his contention that the court commissioner erred by not terminating spousal maintenance: (1) spousal maintenance was ordered to be paid out of his separate property award, (2) the decision was based on 2010 income and expense information, (3) the decision was erroneously based on RCW 26.09.060 instead of RCW 26.09.090, (4) the decision failed to consider his ability to meet his own financial needs while meeting those of his former spouse, and (5) Ms. Aldrich has no continual need for spousal maintenance.

> 1.     *The record is unclear whether Mr. Aldrich is required to pay spousal maintenance out of his separate property award*

Mr. Aldrich argues the court commissioner erred by requiring him to pay the reduced spousal maintenance out of his separate property award.

In *In re Marriage of Mathews*, 70 Wn. App. 116, 125, 853 P.2d 462 (1993) and *In re Marriage of Barnett*, 63 Wn. App. 385, 388, 818 P.2d 1382 (1991), we held that spousal maintenance cannot be ordered to be paid from sources awarded to the obligor spouse as that spouse's separate property.

The court commissioner found that Mr. Aldrich's monthly income from CPPS was approximately $1,666. The finding is unclear whether this is gross or net monthly income. In reviewing the September 11, 2017 argument, it is clear this is a net figure. *See* CP at 593. Because Mr. Aldrich's net income from CPPS is greater than $1,300, the reduced spousal maintenance, we conclude that the court commissioner did not require him to pay spousal maintenance from his separate property.

2. *The court commissioner's 2017 decision was based on the most current income and expense information provided by the parties*

Mr. Aldrich argues the court commissioner erred in basing its decision on 2010 income and expenses. The record does not support his argument. The court commissioner's 2017 decision was based on the most recent income and expense information provided by the parties.

        3.     *The court commissioner's decision shows it was based on RCW 26.09.090, and its references to RCW 26.09.060 were unintended and had no bearing on the decision*

Mr. Aldrich argues the court commissioner erred when it based its decision on RCW 26.09.060, which pertains to temporary spousal maintenance or child support.

Mr. Aldrich correctly notes that the court commissioner cited RCW 26.09.060 in its decision and again in its findings and conclusions. The citations were unintended and had no bearing on the decision. The decision itself notes that Mr. Aldrich requested modification of spousal maintenance. The court commissioner no doubt intended to cite RCW 26.09.090.

        4.     *The decision did not fail to consider Mr. Aldrich's ability to meet his own needs*

Mr. Aldrich argues the court commissioner erred by failing to consider whether he could meet his financial needs while meeting those of his former spouse.

RCW 26.09.090 requires a court to consider various factors when determining whether and how much spousal maintenance to award. One factor is the ability of the obligor to meet his or her needs after paying the obligee. RCW 26.09.090(1)(f). We conclude that the court commissioner considered this factor.

Mr. Aldrich is paid $1,000 per day by CPPS, and works on an as-needed basis. The court commissioner found that Mr. Aldrich's average gross monthly earnings from CPPS were $1,666. This equates to him working less than two days per month.

The court commissioner found that Mr. Aldrich's total monthly net earnings exceeded his monthly expenses by $1,318. It then set Mr. Aldrich's monthly spousal maintenance obligation at $1,300, which is less than $1,318. This establishes that the court commissioner considered RCW 26.09.090(1)(f).

5.      *Ms. Aldrich's lack of need for continued spousal maintenance was not sufficiently raised below*

Mr. Aldrich argues the court commissioner erred by not terminating spousal maintenance because Ms. Aldrich lacks the need for continued maintenance. Ms. Aldrich responds, "Mr. Aldrich's entire Petition was based on his ***inability to pay maintenance*** and not Ms. Aldrich's [lack of] need for maintenance. ***No one*** argued that there was a change in circumstance for Ms. Aldrich." Resp't's Br. at 14. Mr. Aldrich, citing Clerk's Papers 359 to 360, argues that he raised the issue in his July 25, 2017 declaration.

Mr. Aldrich's two-page declaration is a response to Ms. Aldrich's request to continue the hearing on his petition. In his declaration, Mr. Aldrich emphasizes his efforts to have the hearing occur promptly and Ms. Aldrich's efforts to delay the hearing. He argues that delay is causing him "serious and irreparable damage" because spousal

9

maintenance should be terminated. CP at 360. He then re-emphasizes that Ms. Aldrich has continually delayed the matter and notes her lack of financial need as shown by her habit of depositing monthly payments quarterly instead of monthly. In the declaration, Mr. Aldrich never argues that his petition should be granted because Ms. Aldrich lacks the need for continued spousal maintenance.

The parties argued the matter to the court commissioner on September 11, 2017. Mr. Aldrich's argument was that his ability to earn had substantially decreased. He did not argue that Ms. Aldrich lacks the need for continued spousal maintenance.

Under RAP 2.5(a), an appellate argument not first made in the trial court generally is waived. The purpose of the rule is to encourage the efficient use of judicial resources. *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). When arguments are not raised below, the trial court is deprived of an opportunity to make necessary findings for appellate review.

Here, Mr. Aldrich did not argue to the commissioner that spousal maintenance should be terminated because Ms. Aldrich lacked the need for continued maintenance. His failure to argue this resulted in the court commissioner not making necessary findings for appellate review. We, therefore, do not consider this argument on appeal.

10

B.    NO JUDGMENT FOR OVERPAYMENTS AND REQUIRING CONTINUATION OF
      INSURANCE

   1.    *Set-off of overpayments not an abuse of discretion*

Mr. Aldrich argues that the court commissioner abused its discretion when it failed

to award him a judgment for spousal maintenance overpayments.

RCW 26.09.170(1) authorizes a court to modify spousal maintenance only as to

installments accruing after the petition to modify is filed and only upon a showing of a

substantial change in circumstances.  The statute does not direct a trial court how to

compensate an obligor for overpayments made between the filing of the petition and the

court's modification order.

Here, the court commissioner elected to modify the monthly spousal obligation

retroactively to when Mr. Aldrich filed his petition, 24 months earlier.  This benefitted

him considerably.  He now complains that the court commissioner abused its discretion in

not allowing him to enter a judgment against Ms. Aldrich.  A judgment would accrue 12

percent interest per annum, and would permit a full offset of spousal maintenance until

the principal and interest is paid.

Mr. Aldrich cites *In re Marriage of Glass*, 67 Wn. App. 378, 835 P.2d 1054

(1992), and argues a court is required to enter judgment for a retroactive reduction of

spousal maintenance.  *Glass* stands only for the proposition that support payments that

11

have accrued become a vested judgment, and statutory interest must be added to those judgments. *Id.* at 389. Here, Ms. Aldrich received monthly spousal maintenance pursuant to a court order. The modification of that order did not result in a vested judgment for support paid prior to the modification.

The court commissioner, having benefitted Mr. Aldrich considerably by making the reduced spousal maintenance retroactive, did not abuse its discretion by not further benefitting him with a judgment.

2.       *Mr. Aldrich may reduce the face value of the term life insurance*

Mr. Aldrich argues that the face value of the term life insurance policy should be reduced because the monthly spousal maintenance obligation has been reduced. We direct Mr. Aldrich to Exhibit K of the 2010 Divorce Decree. "[Mr. Aldrich] may review the insurance coverage periodically, based on the average life expectancy, and adjust the coverage face value on the policy accordingly." CP at 29.

Mr. Aldrich may adjust the face value of the term insurance policy. If Ms. Aldrich disputes the reduced face value, that issue can be resolved by the appropriate judicial officer.

No. 35748-1-III
*Marr. of Aldrich*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_Lawrence-Berrey, C.J._
Lawrence-Berrey, C.J.

WE CONCUR:

_Korsmo, J._
Korsmo, J.

_Fearing, J._
Fearing, J.

13